UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA      :
     :
      v.                          :          1:20-CR-071-MSM
     :
DAVID ARTEAGA-VALLE         :

## MEMORANDUM AND ORDER

## REGARDING EMERGENCY MOTION TO RELEASE

Since a hearing held on September 10, 2020, Defendant has been detained at the Wyatt Detention Facility pursuant to the Court's amended detention order (ECF No. 15), which is based on serious risk of flight, not on community danger.  Now pending before the Court is Defendant's motion for emergency release.  ECF No. 18.  In his emergency motion, Defendant contends that the danger posed by the recent COVID surge at the Wyatt Detention Facility amounts to a "compelling reason" for temporary release pursuant to 18 U.S.C. § 3142(i).  See United States v. Rebollo-Andino, 312 F. App'x 346, 348 (1st Cir. 2009) (per curiam) (temporary release is reserved for "extraordinary circumstances").  He does not contend that he suffers from any risk-enhancing health conditions.  While the government bears the ultimate burden of persuasion with respect to pretrial detention, because the detention order has entered in this case, it is Defendant who must show that temporary release is necessary under § 3142(i).  See United States v. Stephens, 434 F. Supp. 3d 63, 67 (S.D.N.Y. Mar. 19, 2020) (citing United States v. Dupree, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011)); United States v. Buswell, Criminal No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases).

In reassessing the significance of Defendant's risk of flight in connection with the § 3142(i) analysis, the Court has considered the representation of Defendant's attorney that he came to the United States as a child, does not know Mexico and will persist in continuing to return to the United States whatever a court may order.  The Court also remains mindful of the government's proffer that the mother, with whom Defendant proposes to live, lied (and likely will do so in the future) to law enforcement to

facilitate her son's avoidance of arrest and prosecution.  Further, the current charges include aggravated identity theft, which carries exposure to at least two years of incarceration before deportation.  In sum, Defendant's history and the pending charges (which are supported by strong evidence) establish his willingness and ability to commit crimes to create false identities and to live under such identities, as well as the willingness and the ability to evade the orders of judges to refrain from returning to the United States.  Thus, the Court finds that it is overwhelmingly likely that, if released, Defendant will disappear no matter what conditions the Court may impose.[1]

Regarding danger, at the original hearing, the evidence established that Defendant has a very serious and dangerous criminal history prior to 2010.  However, after his deportation in 2012, at some unknown point in time (no later than in 2017, as confirmed by his employer), Defendant returned to and has lived in the United States.  During that most recent period, from no later than 2017 to the present, Defendant has not been charged with any new crimes.  To the contrary, Pretrial Services verified that, since August 2017, he has worked hard at a full-time stable job and was characterized as a good employee who earned certificates related to his employment.  Also during that period, Defendant lived with his mother at a stable address, to which he proposes to return.  Further, this is not a case where the evidence establishes that Defendant will ignore COVID restrictions if released; in the period since 2017, there is no evidence of substance abuse or anything to suggest that Defendant will not abide by state protocols for COVID safety.  Therefore, despite the recent community surge of COVID, the Court finds that Defendant would unquestionably be safer from COVID exposure in the community where he can and likely will maintain distance and wear a mask, instead of in the congregate setting of the Wyatt where physical proximity is unavoidable and periodic COVID outbreaks seem inevitable.  See Yanes v. Martin, 464 F.

---

[1] Also in the mix is the reality that Defendant is the subject of an ICE detainer and an open warrant issued by a Rhode Island state court.  These may be considered as factors in the analysis of the likelihood that Defendant will be able to appear in this Court to answer the pending charges but may not be dispositive.  See United States v. Salgado, CR No. 20-53JJM, 2020 WL 4747931, at *4 (D.R.I. August 17, 2020) (ICE detainer may be reason for nonvolitional nonappearance but may not be basis for per se finding of serious risk of flight).  In the circumstances of this case, the ICE detainer and the open warrant amount to secondary reasons why, if released from this Court's order of detention, Defendant is overwhelmingly unlikely to continue to appear.

Supp. 3d 467, 471 (D.R.I. 2020) ("Congregate living, such as . . . at Wyatt and other detention facilities

and prisons, magnifies the risk of contracting COVID-19") (internal quotation marks omitted).

The issue for the Court is whether that safety discrepancy rises to the level of a "compelling

reason" pursuant to 18 U.S.C. § 3142(i).  However one may debate the wisdom of imposing punishment

for returning to the country where Defendant has spent most of his life, this Court is constrained by the

law, which criminalizes unauthorized return to the United States and the facilitation of remaining through

illegal procurement and use of false identities.  Once such charges are brought, the law also requires

detention for an individual like Defendant who is overwhelmingly likely to flee rather than face the

charges.  In the cases decided since the COVID pandemic began, courts find compelling reasons for

temporary release if a defendant establishes health conditions that are recognized as enhancing COVID

risk or if conditions to deter flight are likely to be effective.  However, no court has adopted what would

effectively be a *per se* rule that release is required for any prisoner without risk-enhancing medical

conditions during the current (crisis) phase of the COVID pandemic simply because the only basis for

detention is significant risk of flight, without regard to a finding that the risk of nonappearance cannot

reasonably be addressed by conditions.  See United States v. Torres-Rojas, Criminal Action No. 20-

40009-TSH, 2020 WL 3603776, at *2 (D. Mass. July 2, 2020) (higher risk of COVID exposure in prison

as compared to release in community for defendant with no risk-enhancing conditions does not amount to

"compelling reason" pursuant to § 3142(i)); United States v. Le, 457 F. Supp. 3d 6, 8 (D. Mass. 2020)

(ordering temporary release pursuant to § 3142(i) despite lack of risk-enhancing health condition because

"sufficient conditions can be imposed to reduce, if not eliminate flight risk and danger to the

community"); United States v. McIntyre, No. 19-CR-95, 2020 WL 1891837, at *4 (M.D. Pa. Apr. 16,

2020) ("at a minimum courts have typically required proof of a [d]efendant's particular vulnerability to

the disease [in order to] constitute a compelling reason for release under § 3142(i)") (internal quotation

marks omitted).  In light of my finding that Defendant is overwhelmingly likely to disappear no matter

when conditions the Court may impose, I decline to find that there is a "compelling reason" in the

circumstances of this case.

Based on the foregoing, Defendant's motion for emergency release is denied.


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 23, 2020